UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
                                            :
UNITED STATES OF AMERICA                    :          22 Cr. 18 (NSR)
                                            :
            -v.-                            :
                                            :
SHAWN RAINS,                                :
                                            :
                    Defendant.              :
                                            :
--------------------------------------------------------------x


### THE GOVERNMENT'S MOTIONS *IN LIMINE*


                        DAMIAN WILLIAMS
                        United States Attorney
                        Southern District of New York


Stephanie Simon
Jim Ligtenberg
Jamie Bagliebter
Assistant United States Attorneys
    *Of Counsel*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    I. Proof of the Defendant's Involvement in Two Deceptive Acts in Connection with His Employment at the Company Should be Admitted ................................................................. 3

        A. Applicable Law ........................................................................................................ 3

        B. Discussion ............................................................................................................... 8

    II. The Court Should Preclude the Defendant from Engaging in Certain Lines of Cross-Examination ....................................................................................................................... 14

    III. Evidence or Argument Concerning the Defendant's Background, Age, Family, or Any Other Personal Factor Unconnected to Guilt, and Concerning the Potential Punishment the Defendant Faces if Convicted, Should be Precluded ............................................................. 22

    IV. The Court Should Preclude Evidence and Argument that the Victim Failed to Detect or Stop the Defendant's Fraud or Was Otherwise Negligent in Not Uncovering the Fraud ................ 23

        A. Applicable Law ...................................................................................................... 24

        B. Discussion ............................................................................................................. 24

CONCLUSION .................................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Bachir v. Transoceanic Cable Ship Co.*,
  No. 98 Civ. 4625 (JFK), 2002 WL 413918 (S.D.N.Y. Mar. 15, 2002) ................................... 21

*Daniels v. Loizzo*,
  986 F. Supp. 245 (S.D.N.Y. 1997) .......................................................................... 16, 17, 19, 20

*Huddleston v. United States*,
  485 U.S. 681 (1988) ......................................................................................................... 5, 6

*Rogers v. United States*,
  422 U.S. 35 (1975) ............................................................................................................. 23

*Shakur v. United States*,
  32 F. Supp. 2d 651 (S.D.N.Y. 1999) ............................................................................. 19, 20

*Shannon v. United States*,
  512 U.S. 573 (1994) ........................................................................................................... 23

*United States v. Adelekan*,
  567 F. Supp. 3d 459 (S.D.N.Y. 2021) ................................................................................ 25

*United States v. Ahmed*,
  No. 14 Cr. 277 (DLI), 2016 WL 3647686 (E.D.N.Y. July 1, 2016) ....................................... 20

*United States v. Amico*,
  486 F.3d 764 (2d Cir. 2007) ............................................................................................... 24

*United States v. Ashburn*,
  No. 11 Cr. 303 (NGG), 2015 WL 5098607 (E.D.N.Y. Aug. 31, 2015) .................................. 20

*United States v. Avenatti*,
  No. 19 Cr. 374 (JMF), (S.D.N.Y. Jan. 13, 2022) ................................................................. 25

*United States v. Baez*,
  349 F.3d 90 (2d Cir. 2003) .................................................................................................... 4

*United States v. Battaglia*,
  No. S9 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) .............................. 22

*United States v. Carboni*,
  204 F.3d 39 (2d Cir. 2000) ......................................................................................... 4, 9, 13

*United States v. Carton*,
  No. 17 Cr. 680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ..................................... 24

*United States v. Coonan*,
    938 F.2d 1553 (2d Cir. 1991)...........................................................................3, 4

*United States v. Coyne*,
    4 F.3d 100 (2d Cir. 1993) ....................................................................................4

*United States v. Crown*,
    No. 99 Cr. 1044 (AGS), 2000 WL709003 (S.D.N.Y May 31, 2000)....................22

*United States v. Daly*,
    842 F.2d 1380 (2d Cir. 1988)...............................................................................4

*United States v. Devery*,
    935 F. Supp. 393 (S.D.N.Y. 1996)..............................................................17, 21

*United States v. Dupree*,
    870 F.3d 62 (2d Cir. 2017)......................................................................5, 10, 14

*United States v. Gelzer*,
    50 F.3d 1133 (2d Cir. 1995)................................................................................7

*United States v. Gonzalez*,
    110 F.3d 941 (2d Cir. 1997)................................................................................3

*United States v. Gordon*,
    987 F.2d 902 (2d Cir. 1993)....................................................................6, 10, 14

*United States v. Guang*,
    511 F.3d 110 (2d Cir. 2007)................................................................................5

*United States v. Harris*,
    491 F.3d 440 (D.C. Cir. 2007)...........................................................................23

*United States v. Inserra*,
    34 F.3d 83 (2d Cir. 1994) ....................................................................................5

*United States v. Klein*,
    340 F.2d 547 (2d Cir. 1965)................................................................................6

*United States v. Laurent*,
    33 F.4th 63 (2d Cir. 2022) .................................................................................20

*United States v. Lawes*,
    292 F.3d 123 (2d Cir. 2002)...............................................................................18

*United States v. Livoti*,
    196 F.3d 322 (2d Cir. 1999)....................................................................7, 11, 14

*United States v. Mahler*,
  579 F.2d 730 (2d Cir. 1978)...................................................................... 16, 17, 19

*United States v. Maldonado-Rivera*,
  922 F.2d 934 (2d Cir. 1990)............................................................................... 18

*United States v. Mercado*,
  573 F.3d 138 (2d Cir. 2009)................................................................................. 6

*United States v. Mills*,
  895 F.2d 897 (2d Cir. 1990).................................................................................. 6

*United States v. Mohamed*,
  No. 18 Cr. 603 (ARR), 2020 WL 1686259 (E.D.N.Y. Apr. 7, 2020)................................ 16, 19

*United States v. Nekritin*,
  No. 10 Cr. 491 (KAM), 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ................................. 24

*United States v. Paccione*,
  949 F.2d 1183 (2d Cir. 1991)................................................................................ 22

*United States v. Paulino*,
  445 F.3d 211 (2d Cir. 2006)................................................................................... 7

*United States v. Pipola*,
  83 F.3d 556 (2d Cir. 1996)............................................................................... 5, 10

*United States v. Pitre*,
  960 F.2d 1112 (2d Cir. 1992)............................................................................... 6, 7

*United States v. Puco*,
  453 F.2d 539 (2d Cir. 1971)................................................................................. 18

*United States v. Quinones*,
  511 F.3d 289 (2d Cir. 2007)................................................................................... 4

*United States v. Ramirez*,
  894 F.2d 565 (2d Cir. 1990)................................................................................... 5

*United States v. Reese*,
  933 F. Supp. 2d 579 (S.D.N.Y. 2013)........................................................................ 6

*United States v. Rigas*,
  490 F.3d 208 (2d Cir. 2007)................................................................................... 9

*United States v. Riley*,
  No. 13 Cr. 339 (VEC), 2014 WL 3435721 (S.D.N.Y. July 14, 2014)..................................... 23

*United States v. Romero-Padilla,*
   583 F.3d 126 (2d Cir. 2009)........................................................................ 5

*United States v. Tartir,*
   347 F. App'x 655 (2d Cir. 2009) ................................................................ 7

*United States v. Thai,*
   29 F.3d 785 (2d Cir. 1994)........................................................................... 4

*United States v. Thomas,*
   54 F.3d 73 (2d Cir. 1995) ............................................................................ 6

*United States v. Thomas,*
   377 F.3d 232 (2d Cir. 2004)................................................................... 24, 25

*United States v. Tussa,*
   816 F.2d 58 (2d Cir. 1987)........................................................................... 7

*United States v. Vereen,*
   99 Cr. 279, 2000 WL 490740 (D. Conn. Mar. 2, 2000) ........................... 21

*United States v. Vickers,*
   No. 13 Cr. 128 (RJA), 2015 WL 751228 (W.D.N.Y. Feb. 23, 2015)........ 20

*United States v. Watts,*
   No. 09 Cr. 62 (CM), 2011 WL 167627 (S.D.N.Y. Jan. 11, 2001)............ 6

*United States v. Wilkerson,*
   361 F.3d 717 (2d Cir. 2004)....................................................................... 18

*United States v. Williams,*
   205 F.3d 23 (2d Cir. 2000).......................................................................... 5

*United States v. Zackson,*
   12 F.3d 1178 (2d Cir. 1993)............................................................... 5, 6, 10

*Zinman v. Black & Decker, Inc.,*
   983 F.2d 431 (2d Cir. 1993)................................................................. 16, 19

### Statutes

18 U.S.C. § 1035........................................................................................... 15

New York Penal Law § 155.25 ..................................................................... 15

## Rules

Fed. R. Evid. 401 ................................................................................................ 22

Fed. R. Evid. 402 ................................................................................................ 22

Fed. R. Evid. 403 ................................................................................ 7, 17, 21, 23

Fed. R. Evid. 404(b) ............................................................................................. 4

Fed. R. Evid. 608(a) ........................................................................................... 17

Fed. R. Evid. 608(b) ...................................................................................... 17, 20

Fed. R. Evid. 609(a) ........................................................................................... 16

Fed. R. Evid. 609(b)(1) .................................................................................. 16, 18

Fed. R. Evid. 611 ............................................................................................... 18

## PRELIMINARY STATEMENT

The Government respectfully seeks rulings *in limine* on certain evidentiary issues in advance of the trial against defendant Shawn Rains ("Rains" or the "defendant"), which is scheduled to begin on June 13, 2023. The Government moves *in limine* to: (1) admit evidence of the defendant's involvement in certain other acts of deception relating to the victim company as direct proof of the charged crimes and for proper purposes under Federal Rule of Evidence 404(b); (2) to preclude certain lines of cross-examination of two civilian witnesses; (3) to preclude the defense from making arguments that are not properly presented to the jury and are simply a guise for jury nullification; and (4) to preclude evidence and argument that the victim company failed to detect or stop the defendant's fraud or were otherwise negligent in not uncovering the fraud.

## BACKGROUND

Indictment 22 Cr. 18 charges the defendant with one count of conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349; one count of mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2; and one count of conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). The Government expects that the evidence presented at trial will establish the following facts, in substance and in part:

Until 2017, the defendant was the Executive Vice President of the Claims Department at a healthcare benefit management company headquartered in White Plains, New York (the "Company"). The Company's clients are primarily health insurance companies, who rely on the Company to provide medical management services relating to, among other things, claims administration. The defendant's department handled the ingestion, data processing and review of patient healthcare-related insurance claims.

One of the individuals who reported to the defendant at the Company was Joseph Maharaj, the defendant's co-defendant in this case.  Maharaj ran the Focused Claims Review ("FCR") department, which was supervised by the defendant.  The defendant and Maharaj also had a close personal relationship, and—separate from their employment at the Company—jointly owned and operated a real estate investment company, SRJM Holdings.

From approximately 2009 to 2017, the defendant and Maharaj orchestrated a scheme in which three fake vendors billed the Company for approximately $4 million of work that those vendors did not perform.  Two of the vendors, Payro Consulting LLC ("Payro") and Data Processing Central ("DPC"), were controlled by Maharaj's stepfather ("CC-1").  The third vendor, Worldwide Data Solutions ("WWDS" and together with the other fraudulent companies, the "Fraudulent Vendors"), was controlled by Maharaj's high school friend ("CC-2").  The scheme was in part facilitated by another Company employee, who ran the data management department and reported to the defendant ("CC-3").

As part of the scheme, one or more of the coconspirators prepared invoices from the Fraudulent Vendors and submitted those invoices to the Company for payment.  In general, these invoices falsely claimed that the Fraudulent Vendors were performing work that was the responsibility of the Claims Department.  In reality, this work was either (i) not performed at all, or (ii) already being performed by salaried Company employees, or by the Company's primary legitimate vendor.  The defendant, Maharaj, or CC-3, in their capacities as Company employees, then approved the invoices for payment, which caused those invoices to be paid by the Company, including through checks sent by mail.

In early 2017, Company employees discovered that a relative of Maharaj ("Witness-1") was receiving paychecks as an employee of the Company but not performing any work for the

company.  Following that discovery, the Company began an internal investigation and Maharaj resigned shortly thereafter.  As the Company continued its internal investigation and began to uncover the Fraudulent Vendors, the defendant also resigned.

## ARGUMENT

## I.    Proof of the Defendant's Involvement in Two Deceptive Acts in Connection with His Employment at the Company Should be Admitted

The Government seeks to admit testimony regarding two instances in which the defendant deceived the Company in order to receive a personal benefit: (1) in or about 2015, the defendant and Maharaj provided Witness-1 with a "no show" job at the Company to compensate Witness-1 for work Witness-1 performed for SRJM Holdings, the defendant and Maharaj's real estate investment company; and (2) in or about 2012, the defendant partnered with the then-owner and chief executive of a legitimate Company vendor ("Vendor-1") to develop and sell software to the Company without disclosing his financial interest in the software to the Company.  For the reasons explained below, evidence of these acts is admissible as direct proof of charged crimes, as Rule 404(b) evidence, or both.

### A.  Applicable Law

#### 1.    Other Acts Evidence as Intrinsic or Direct Proof

Direct evidence is "not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 941, 942 (2d Cir. 1997).[1]  As the Second Circuit has explained, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id.*; *accord United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991).  The Second Circuit has

---

[1] Unless otherwise indicated, all case quotations omit internal quotation marks, citations, and alterations.

repeatedly held that prior actions and statements are admissible as direct evidence of the crimes

charged, and are "not considered other crimes evidence under" Federal Rule of Evidence 404(b),

if (a) they "arose out of the same transaction or series of transactions as the charged offense";

(b) they are "inextricably intertwined with the evidence regarding the charged offense"; or (c) they

are "necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39,

44 (2d Cir. 2000); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United

States v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003). Moreover, "[w]hen the indictment contains a

conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."

*United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994); *Baez*, 349 F.3d at 93 (upholding admission

of sixteen uncharged crimes in conspiracy prosecution because "where . . . a conspiracy is charged,

uncharged acts may be admissible as direct evidence of the conspiracy itself").

Such evidence need not "directly establish an element of the offense charged," but rather,

it can "provide background" for the alleged events, and it may be admitted to show "the

circumstances surrounding the events or to furnish an explanation of the understanding or intent

with which certain acts were performed." *Coonan*, 938 F.2d at 1561 (quoting *United States v.

Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988)); *see also United States v. Coyne*, 4 F.3d 100, 113 (2d

Cir. 1993) (finding that evidence of the defendant's membership in a developmental agency that

pre-dated the charges in the indictment was "clearly admissible" as background and relevant to

show his established relationships and to explain his subsequent involvement in a project).

### 2.  Other Acts Evidence Pursuant to Rule 404(b)

Federal Rule of Evidence 404(b) separately allows evidence of uncharged crimes, wrongs,

or other acts for any purpose other than showing the defendant's propensity to commit crimes. *See*

Fed. R. Evid. 404(b). Such evidence is admissible if (1) advanced for a proper purpose;

(2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial;

and (4) admitted subject to a limiting instruction, if such an instruction is requested. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).  The Second Circuit follows an "inclusionary approach" under which "prior act evidence is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017).  The Supreme Court has recognized that other acts evidence "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston*, 485 U.S. at 685.  Trial courts, therefore, have broad latitude in determining whether to admit evidence pursuant to Rule 404(b). *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994).

Other act evidence is routinely admitted "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *see also, e.g.*, *United States v. Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009) (although evidence of defendant's previous plans with a co-conspirator to import narcotics "did not concern the charged conspiracy, it was relevant background evidence" because, among other reasons, "it corroborated the charge that [the co-conspirator] and [defendant] were partners during the charged conspiracy"); *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (affirming admission of other acts evidence to show how "illegal relationship" between co-conspirators evolved); *United States v. Pipola*, 83 F.3d 556, 565-66 (2d Cir. 1996) (noting that "legitimate purpose[s] for presenting evidence of extrinsic acts"

under Rule 404(b) include "explain[ing] how a criminal relationship developed," and "help[ing] the jury understand the basis for the co-conspirators' relationship of mutual trust").

Evidence of another criminal act that is "sufficiently similar to the conduct at issue" may be admitted at trial "to show that a defendant who claims that his conduct had an innocent explanation had the knowledge or intent necessary to commit the charged offense." *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (citing *Huddleston*, 485 U.S. at 687-88); *see also Zackson*, 12 F.3d at 1182 ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."). A defendant's knowledge and intent are in issue unless the defendant has expressed with sufficient clarity a decision not to dispute that element of the offense. *See United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992).

"Evidence of a defendant's participation in other, similar frauds is routinely admissible pursuant to Rule 404(b) to show knowledge and intent in fraud cases," *United States v. Watts*, No. 09 Cr. 62 (CM), 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2001), especially where there is a close parallel between the crime charged and the acts shown. *See United States v. Mills*, 895 F.2d 897, 907-08 (2d Cir. 1990); *United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009). As the Second Circuit explained in *United States v. Klein*, 340 F.2d 547, 549 (2d Cir. 1965), "the rule which permits the introduction of evidence respecting similar offenses for this limited purpose is based on the sound recognition that when there exists a pattern of misrepresentations, closely related in time and subject matter, it is reasonable to believe that they were not made innocently." *See, e.g.*, *United States v. Thomas*, 54 F.3d 73, 82 (2d Cir. 1995) (upholding admission of prior fraud conviction to prove knowledge and intent for possession of stolen money orders); *United States v. Reese*, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013) (allowing admission of multiple prior

convictions because "each prior conviction involves [the defendant] engaging in fraudulent practices to gain money"); *see also United States v. Tartir*, 347 F. App'x 655, 658 (2d Cir. 2009) (approving admission at trial of defendant's prior involvement in marriage fraud schemes to show the defendant's intent where the defendant argued "that he did not know that the marriages in question were fraudulent").

### 3. Federal Rule of Evidence 403

Evidence offered under Rule 404(b) remains subject to Federal Rule of Evidence 403. The Court must therefore determine whether the probative value of the offered evidence is "substantially outweighed" by a danger of "unfair prejudice" or confusion. Fed. R. Evid. 403. The Second Circuit has found admission appropriate where the offered evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged." *Pitre*, 960 F.2d at 1120; *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (evidence of uncharged act properly admitted where it "did not involve conduct more inflammatory than the charged crime"). In general, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995). Any risk of unfair prejudice from otherwise probative evidence can be addressed with a limiting instruction reminding the jury that the defendant is not on trial for any offense other than the crimes charged. *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant).

### B. Discussion

#### 1. Witness-1's "No-Show" Job at the Company

##### a. Factual Background

Witness-1 is a relative of Maharaj's wife and a carpenter by trade. The Government expects that Witness-1 will testify, in pertinent part, as follows:[2]

In or about 2014, Witness-1 was hired by the defendant and Maharaj to do construction and maintenance work part-time on buildings owned by their joint real estate investment company, SRJM. In or about 2015, the defendant and Maharaj communicated to Witness-1 that they wanted him to work full-time for SRJM. Rather than pay Witness-1 for the additional time he would spend doing construction and maintenance work for SRJM out of their own pockets, the defendant and Maharaj arranged for Witness-1 to be hired for a "job" at the Company, with the understanding that Witness-1 would not do any work for the Company, but that he would nonetheless be paid by the Company, and that the paychecks Witness-1 received from the Company would be compensation for the work Witness-1 was doing for SRJM.

In furtherance of that scheme, Witness-1 met with the defendant and Maharaj in the Company's offices; the defendant and Maharaj told Witness-1, in substance, that he might fit as an "auditor" at the Company. Witness-1 understood that the defendant and Maharaj were aware at the time that Witness-1 had no training or experience as an auditor. Thereafter, Witness-1 was hired as a Company employee and given a desktop computer to permit him to work remotely from

---

[2] The Government also intends to elicit from Witness-1 additional testimony relevant to the crimes charged in the Indictment—testimony that does not implicate any prior bad acts. For example, Witness-1 is expected to testify that the defendant hired him to do construction work on the defendant's home in Connecticut and paid him in cash. The defendant will also testify regarding expensive outings he went on with the defendant and Maharaj during the time period of the charged crimes, including to Las Vegas and professional sporting events.

home.  The defendant and Maharaj instructed Witness-1 to log-in to the Company computer each day.  When that became too onerous because Witness-1 was working at various SRJM buildings each day, the defendant and Maharaj provided Witness-1 with a laptop and transitioned him from an hourly employee to a salaried employee.  Witness-1 received a direct deposit payment from the Company every other week.  Witness-1 did not perform any work for the Company.

In addition to Witness-1's testimony, the Government anticipates presenting testimony through Company employees that in or about 2017, the Company discovered that Witness-1 was being paid without performing any work for the Company.  An internal investigation initiated after that discovery further revealed the payments to the Fraudulent Vendors charged in the Indictment.

### b. Analysis

Witness-1's expected testimony regarding his "no show" job at the Company is admissible as direct evidence of the charged crimes because it is "inextricably intertwined with the evidence regarding the charged offense[s]" and "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44.  The evidence explains how the charged fraud was uncovered.  The Company discovered the charged fraud through an investigation that was spurred by its discovery of Witness-1's fraudulent employment with the Company.  Accordingly, to tell the story of the crime on trial—specifically the Company's discovery that the defendant and Maharaj had stolen millions of dollars from the Company through payments to the Fraudulent Vendors—the Government must explain that this discovery was made after investigating yet another fraudulent act committed by the defendant and Maharaj. *See, e.g.*, *United States v. Rigas*, 490 F.3d 208, 238-39 (2d Cir. 2007) (affirming admission of evidence of uncharged fraudulent acts predating the charged conspiracy as direct proof of the charged accounting fraud because the evidence was "inextricably intertwined with" the proof of the charged conspiracy and "necessary to complete the story of the crime on trial").

Evidence about Witness-1's "no show" job is also admissible under Rule 404(b) because it shows the defendant's motive, opportunity, knowledge, intent, and lack of accident or mistake. *First*, evidence about Witness-1's "no show" job at the Company during the time frame of the conspiracy shows that the defendant and Maharaj had the power within the Company to commit the charged crimes. The defendant and Maharaj were able to pay Witness-1 through the Company because they had positions of power at the Company. It is this same position of power that allowed the defendants to steal millions of dollars from the Company through the Fraudulent Vendors.

*Second*, the defendant may argue that, despite his signature being on many of the fraudulent invoices, the fraudulent scheme was conducted by Maharaj alone, and he was not aware that the Fraudulent Vendors were not performing the work specified on the invoices. As such, the defendant's knowledge and intent are squarely at issue. Witness-1's testimony that the defendant and Maharaj jointly arranged for him to receive paychecks from the Company in exchange for his construction and maintenance work for SRJM demonstrates the defendant's willingness to defraud the Company jointly with Maharaj. *See, e.g.*, *Zackson*, 12 F.3d at 1182. In short, the hiring of Witness-1 for a no-show job "close[ly] parallel[s] … the crime charged" insofar as it involved the same victim and overlapping time frame, and thus is relevant to show knowledge and intent. *Gordon*, 987 F.2d at 908-09.

Finally, the proposed evidence is admissible because it provides background on the conspiracy and explains the nature of the criminal relationship between the defendant and Maharaj. *See Dupree*, 870 F.3d at 76 (approving admission of evidence under Rule 404(b) "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators"); *see also Pipola*, 83 F.3d at 566 ("One legitimate purpose for presenting

10

evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.  Such proof may also be used to help the jury understand the basis for the coconspirators' relationship of mutual trust."). Witness-1's anticipated testimony establishes the close relationship between the defendant and Maharaj and their willingness to jointly enter into a fraudulent scheme.

Rule 403 does not preclude this evidence.  For the reasons stated above, such evidence is highly probative of the defendant's participation in the charged conspiracy.  This evidence is not unfairly prejudicial because evidence of the defendant's participation in Witness-1's "no show" job at the Company "did not involve conduct more inflammatory than the charged crime." *Livoti*, 196 F.3d at 326.

### 2. Undisclosed Conflict-of-Interest

#### a. Factual Background

Witness-2 is the former owner and chief executive of Vendor-1.  During the time period charged in the Indictment, Vendor-1 performed data management and software development services for the Company.  Throughout the charged conspiracy, the defendant was the vendor relationship manager for Vendor-1 at the Company.  Among other things, Witness-2 is expected to testify about a software product that Witness-2 developed in partnership with the defendant and the defendant's failure to disclose to the Company his financial interest in that product.  In particular, Witness-2 is expected to testify, in pertinent part, as follows:[3]

---

[3] In addition to the bad acts testimony discussed herein, Witness-2 is also expected to testify about his relationship with the defendant and Maharaj and about his work for Vendor-1.  In part, Witness--2 is expected to testify (i) about the defendant's close relationship with Maharaj; (ii) about the defendant's efforts to have Vendor-1 hire Maharaj after Maharaj's departure from the Company; and (iii) that, in or about 2017, prior to the defendant's departure from the Company, the defendant asked Witness-2—without apparent business reasons—to produce reports of work Vendor-1 had

When the defendant was an executive at the Company, the defendant approached Witness-2 about working together to build a software application that helped companies perform audits of insurance claims (the "Audit Application"). Thereafter, the defendant and Witness-2 (through Vendor-1) built the Audit Application. The defendant provided information about what features the Audit Application should have, and Vendor-1 did the programming. Once the product was developed, Vendor-1 sold the product to the Company and split the profits with the defendant. Witness-2 thought there may have been a conflict of interest with the defendant being an executive at the Company while receiving profits from the Audit Application, but the defendant had told Witness-2 that the arrangement was fine.

Between 2009 and 2017, Witness-2 paid the defendant, directly or indirectly, over $1 million in connection with the Audit Application. At the defendant's request, Witness-2 made these payments by sending money initially to the defendant's father-in-law and then later to a company run by the defendant, Health Care Consulting Options LLC. In or about 2017, Witness-2 paid the defendant to purchase the defendant's interest in the Audit Application.

In addition to Witness-2's testimony, the Government anticipates presenting testimony through Company employees that an arrangement whereby an executive received a profit share of a software product that the executive manages would pose a conflict of interest. Testimony will establish that such an arrangement would only be appropriate if disclosed and consented to by upper management in the Company, most likely including the General Counsel and the Chief Executive Officer, and that the defendant never disclosed, and the management never approved of, this arrangement.

---

completed for the Company in the past several years, in an apparent attempt to cover up his crimes by claiming that the Fraudulent Vendors performed that work.

### b. Analysis

Witness-2's proposed testimony regarding the Audit Application is admissible as direct evidence of the charged crimes because it is "inextricably intertwined with the evidence regarding the charged offense[s]" and "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44.  The evidence will show that the defendant used lies and deception to get as much money from the Company as possible, through any means possible, and particularly through the use of the relationships with vendors that he himself managed (which is how he was able to exploit the Company for profit, in various ways, without detection).  Specifically, the Fraudulent Vendors were billing the Company in part for work actually done by Vendor-1, under the supervision of Witness-2, and that the defendant and his coconspirators abused their positions at the Company to cause those fraudulent invoices to be approved for payment.  Knowledge gleaned from the defendant's relationship with Vendor-1, such as the types of services to include on the Fraudulent Vendors' fake invoices, helped to facilitate the fraud.  At the same time, the defendant was exploiting his position at the Company to sell the Audit Application to the Company without disclosing his financial interest to the Company, which the defendant accomplished by lying to both Witness-2 and to the Company.  Accordingly, to tell the story of the charged crimes, the Government must elicit testimony regarding the Audit Application.

In the alternative, Witness-2's proposed testimony is admissible under Rule 404(b) because it proves motive, opportunity, intent, knowledge and absence of accident or mistake.  The testimony regarding the defendant's undisclosed conflict of interest with respect to the Audit Application demonstrates the defendant's intent to defraud the Company.  With respect to the Audit Application, the defendant lied to the Company by not disclosing that he was receiving money in connection with in the Audit Application and abused his position as an executive within the Company to enrich himself.  The fraud charged in the Indictment likewise involved the

13

defendant abusing his position at the Company to obtain money from the Company by false or fraudulent pretenses. Where, as here, there is a "close parallel between the crime charged and the acts shown," courts have routinely found that the other bad acts were probative and admissible under Rule 404(b) to show knowledge and intent. *Gordon*, 987 F.2d at 908-09; *see also, e.g.*, *Dupree*, 870 F.3d at 76-77. Furthermore, evidence of the defendant's other efforts to defraud the Company, such as his undisclosed conflict of interest with respect to the Audit Application, demonstrate that his acts in furtherance of the fraud charged in the Indictment (such as signing the invoices that paid the Fraudulent Vendors) were not a product of accident or mistake.

Finally, this evidence is not precluded by Rule 403 because it does not "involve conduct more inflammatory than the charged crime." *Livoti*, 196 F.3d at 326. To the contrary, this evidence—which will be presented primarily through a limited amount of additional witness testimony—provides relevant, probative information to the jury without unfairly prejudicing the defendant.

## II.    The Court Should Preclude the Defendant from Engaging in Certain Lines of Cross-Examination

One of the Government's expected witnesses at trial ("Witness-3") has two prior criminal convictions that are more than seventeen years old. Another expected witness, a co-conspirator of the defendant and Maharaj who is referred to above as "CC-2," engaged in various acts of petty theft, many years ago, but was never arrested or prosecuted. The Court should preclude the defendant from cross-examining the witnesses on any of these subjects.

### A. Factual Background

Witness-3 is a Company employee who is expected to testify about the functioning of the Company and about Witness-3's interactions with the defendant. In or about May 2005, Witness-3 was convicted in the United States District Court for the District of New Jersey of false

statements relating to health care matters, in violation of 18 U.S.C. § 1035, and sentenced to three months' imprisonment and three years' supervised release. In or about January 2006, Witness-3 was convicted in Albany County Court of grand larceny in the third degree, in violation of New York Penal Law § 155.25, and sentenced to five years' probation. Witness-3 has no criminal convictions within the last 17 years.

CC-2 is a high school friend of Maharaj who participated in the fraud and money laundering scheme charged in this case by helping operate Worldwide Data Solutions, one of the Fraudulent Vendors that billed the Company for work that the vendor did not perform. CC-2 has pled guilty to mail fraud, mail fraud conspiracy, and money laundering conspiracy pursuant to a cooperation agreement. CC-2 is expected to testify about how the fraud and money laundering scheme was carried out and about CC-2's participation in that scheme with Maharaj.

CC-2 has engaged in various acts of petty theft over the years. CC-2 was never arrested or convicted for any of these acts; rather, CC-2 freely admitted to this conduct in proffers with the Government. When CC-2 was in high school, more than 25 years ago, CC-2 stole random items, such as clothing, from retail stores. When CC-2 was in college, between approximately 1999 and 2004, CC-2 stole clothing from a retail store (the Gap) approximately 5-10 times while working as a store employee. On approximately five or six occasions after college, CC-2 stole from retailers by returning items that did not qualify for a refund—for example, if a product that CC-2 had already purchased from a store broke and CC-2 was outside the window for a refund, CC-2 would buy the same product again and then return the broken product for a refund. On one or two occasions, CC-2 purchased jeans on the street that CC-2 assumed to have been stolen. In or about 2016, CC-2 purchased an Amazon Echo, resold it to a friend, and told Amazon that it was lost. Amazon locked the device and CC-2 refunded the friend's money. In or about 2017, CC-2 ordered

clothing for delivery from a retail store, told the store the clothing had not arrived, kept the clothing, and received a refund from the store.  Finally, in or about 2017, CC-2 mistakenly received a package that belonged to a neighbor, and when CC-2 realized that the package (a winter hood) did not belong to CC-2, CC-2 kept it anyway.[4]

## B.  Applicable Law

### 1.    Prior Criminal Convictions

Federal Rule of Evidence 609 sets forth the "rules [that] apply to attacking a witness's character for truthfulness by evidence of a criminal conviction."  Fed. R. Evid. 609(a).  Under Rule 609(b), there is a "high bar" for the admission of convictions that are more than 10 years old.  *United States v. Mohamed*, No. 18 Cr. 603 (ARR), 2020 WL 1686259, at *2 (E.D.N.Y. Apr. 7, 2020).  If "more than 10 years have passed since the witness's conviction or release from confinement for it," then "[e]vidence of the conviction is only admissible if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(b)(1).

"The Second Circuit has recognized that Congress intended that convictions more than ten years old be admitted 'very rarely and only in exceptional circumstances.'"  *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *Zinman v. Black & Decker, Inc.*, 983 F.2d 431, 434 (2d Cir. 1993)); *see United States v. Mahler*, 579 F.2d 730, 735 (2d Cir. 1978) ("It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional

---

[4] In addition to the above acts of petty theft, CC-2 also: (1) owned and used a fake identification prior to age 21; (2) used an employee identification for a company where he no longer worked in order to get into museums for free; (3) lived in an illegal rent sublet; and (4) loaned money to his nephew, and later heard (but never knew) that his nephew was engaged in criminal conduct.  As discussed below, the Government is moving to preclude cross-examination on these topics as well.

circumstances."); *see also Mahler*, 579 F.2d at 736 (Congress "believed that convictions more than ten years old have very little or no probative value.").  In determining whether such "exceptional circumstances" exist, courts must consider a number of factors, including the nature, age, and severity of the crime and whether the witness has subsequently "mended his ways" or engaged in similar conduct recently.  *Daniels*, 986 F. Supp. at 252.

### 2.    Prior Conduct Other Than Criminal Convictions

Federal Rule of Evidence 608(b), in turn, sets forth the circumstances under which a witness's specific instances of prior conduct, other than criminal convictions, may be used to impeach a witness.  Rule 608(b) provides, in relevant part, that:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed. R. Evid. 608(b).  Accordingly, in determining whether to permit cross-examination regarding specific instances of a witness's conduct, a court first must decide whether the conduct is probative of the witness's character for truthfulness or untruthfulness.  *See* Fed. R. Evid. 608(b).  "In accordance with the bulk of judicial authority, the inquiry is strictly limited to character for veracity, rather than allowing evidence as to character generally."  Fed. R. Evid. 608(a) advisory committee's note.

Further, even if such prior conduct is probative of truthfulness or untruthfulness, the Court may still exclude cross-examination regarding such conduct if it finds that the "probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *accord United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996) ("Such [prior] acts are only admissible insofar as they bear on

17

a witness's propensity for truthfulness or untruthfulness, and, even if the prior act does concern

the witness's character for truthfulness under Rule 608(b), its probative value must not be

substantially outweighed by its unfairly prejudicial effect under Rule 403.").

It is well-settled that the scope and extent of cross-examination is within the sound

discretion of the court, *see United States v. Wilkerson*, 361 F.3d 717, 734 (2d Cir. 2004), and that

courts may, in their discretion, make advance rulings on motions to preclude certain cross-

examination, s*ee United States v. Puco*, 453 F.2d 539, 541-42 (2d Cir. 1971).  The Court may

therefore properly bar cross-examination that is marginally relevant to the issues before it, *United

States v. Maldonado-Rivera*, 922 F.2d 934, 956 (2d Cir. 1990), to "avoid wasting time" and to

"protect witnesses from harassment or undue embarrassment," Fed. R. Evid. 611.  A district court's

"decision to restrict cross-examination will not be reversed absent an abuse of discretion."  *United

States v. Lawes*, 292 F.3d 123, 131 (2d Cir. 2002).

## C.  Discussion

Pursuant to Rules 608, 609, and 403, the Court should preclude any cross-examination

regarding Witness-3's criminal convictions and regarding CC-2's acts of petty theft.  This evidence

has no probative value, and cross-examination regarding this evidence would only cause

confusion, embarrassment, undue delay, and unnecessary distractions.

First, the Court should preclude cross-examination regarding Witness-3's criminal

convictions from May 2005 and January 2006.  Because "more than 10 years have passed" since

these convictions, evidence of these convictions "is admissible *only* if . . . its probative value,

supported by specific facts and circumstances, *substantially* outweighs its prejudicial effect."  Fed.

R. Evid. 609(b)(1) (emphases added).  And because "convictions more than ten years old have

very little or no probative value," this "high bar" is incredibly difficult to meet, and is satisfied

"very rarely and only in exceptional circumstances." *Mahler*, 579 F.2d at 736; *Zinman*, 983 F.2d at 434; *Daniels*, 986 F. Supp. at 250; *Mohamed*, No. 18 Cr. 603 (ARR), 2020 WL 1686259, at \*2. Such exceptional circumstances are not present here. Witness-3's convictions are more than 17 years old. In the 17-plus years since these convictions, Witness-3 has "mended his ways," ceased any criminal conduct, and become a productive member of society. *Daniels*, 986 F. Supp. at 252. The relative lack of severity of Witness-3's crimes—as evidenced by the light sentences—also weighs against a finding of exceptional circumstances here. *See id.* (listing the nature and severity of the crime as relevant factors). In addition, the conviction for grand larceny is not probative of Witness-3's truthfulness or untruthfulness. *See, e.g.*, *Shakur v. United States*, 32 F. Supp. 2d 651, 671 (S.D.N.Y. 1999) ("It is generally held that crimes of theft are not probative of truthfulness." (citing *Weinstein's Federal Evidence*)); *see also infra* (discussing this issue in greater depth). And while the conviction for false statements does involve dishonesty, the age of the offense, its relative lack of severity, and Witness-3's subsequent action in mending his ways greatly limit its probative value. *See Daniels*, 986 F. Supp. at 252; *Mohamed*, No. 18 Cr. 603 (ARR), 2020 WL 1686259, at \*2. Cross-examination on these subjects would only serve to embarrass the witness, confuse and distract the jury, cause undue delay, and create an unnecessary side show. Because the defendant cannot demonstrate "exceptional circumstances" justifying the admission of Witness-3's convictions from more than 17 years ago, the Court should preclude cross-examination on these topics. *See, e.g.*, *Mohamed*, No. 18 Cr. 603 (ARR), 2020 WL 1686259, at \*2 ("While I agree with defendant that fare evasion is an offense that does involve dishonesty, both the age of the offense and its lack of severity greatly limit its probative value. . . . It would be an unnecessary distraction. Defendants have failed to demonstrate specific facts and circumstances to overcome Rule 609(b)'s high bar, and thus, cross-examination on this topic will not be permitted.").

19

Likewise, the Court should preclude cross-examination regarding CC-2's various acts of petty theft. CC-2 was never arrested or convicted for these acts—CC-2 freely admitted to them in proffers with the Government. And these acts of petty theft are not probative of Witness-2's truthfulness or untruthfulness. *See* Fed. R. Evid. 608(b). First, as noted above, "It is generally held that crimes of theft are not probative of truthfulness." *Shakur*, 32 F. Supp. 2d at 671 (citing *Weinstein's Federal Evidence*); *see also, e.g.*, *United States v. Ashburn*, No. 11 Cr. 303 (NGG), 2015 WL 5098607, at *24 (E.D.N.Y. Aug. 31, 2015) (precluding cross-examination regarding theft offenses because the offenses did "not require proof of a 'dishonest act or false statement' within the meaning of the Rule"), *rev'd in part on other grounds by United States v. Laurent*, 33 F.4th 63 (2d Cir. 2022); *United States v. Vickers*, No. 13 Cr. 128 (RJA), 2015 WL 751228, at *3 (W.D.N.Y. Feb. 23, 2015) (excluding evidence of prior thefts because they did "not involve dishonesty or a false statement").

Second, CC-2's acts were relatively minor in severity. *See Daniels*, 986 F. Supp. at 252. Although CC-2 undoubtedly committed theft, CC-2 generally stole items like clothing that were not particularly valuable. This weighs against the probative value of these acts in demonstrating CC-2's truthfulness or untruthfulness.

Third, CC-2's acts of petty theft are too remote in time to be probative of CC-2's truthfulness or untruthfulness. Many of these acts took place decades ago when CC-2 was in high school and college. And even the most recent of these acts—keeping a winter hood that was mistakenly delivered to CC-2's home instead of to a neighbor—occurred approximately six years ago. CC-2's acts are too old, and too insignificant, to be probative of CC-2's current truthfulness or untruthfulness. *See, e.g.*, *United States v. Ahmed*, No. 14 Cr. 277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016) (excluding impeachment evidence under Rule 608 as being "too remote

in time to have any significance"); *Bachir v. Transoceanic Cable Ship Co.*, No. 98 Civ. 4625 (JFK), 2002 WL 413918, at *10 (S.D.N.Y. Mar. 15, 2002) ("The remoteness of the alleged bad acts is a factor for the trial court to consider."); *United States v. Vereen,* 99 Cr. 279, 2000 WL 490740, at *6 (D. Conn. Mar. 2, 2000) ("[C]ourts have generally applied the ten-year limit of Rule 609(b) to Rule 608, despite the absence of explicit language to that effect under Rule 608.") (Droney, J.); *see also Devery*, 935 F. Supp. at 408 (precluding cross-examination regarding misconduct, in part because "the misconduct was relatively remote in time (occurring about seven years before trial)"). The defendant should therefore be precluded from cross-examining CC-2 regarding the acts of petty theft.

Finally, even if CC-2's acts of petty theft had some marginal probative value as to his truthfulness or untruthfulness—which they do not—the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, embarrassing the witness, undue delay, and waste of time. *See* Fed. R. Evid. 403; *Devery*, 935 F. Supp. at 407–08. The Court should therefore preclude cross-examination regarding CC-2's acts of petty theft.[5]

---

[5] For similar reasons, the Court should preclude cross-examination regarding CC-2's (1) ownership and use of a fake identification prior to age 21; (2) use of an employee identification for a company where he no longer worked to get into museums for free; (3) residence in an illegal rent sublet; and (4) loaning money to his nephew, and later hearing (but not knowing) that his nephew was engaged in criminal conduct. None of these acts are probative of CC-2's truthfulness or untruthfulness. CC-2's use of a fake identification to purchase alcohol prior to turning 21 is a relatively minor offense that occurred decades ago. The other three acts are not untruthful (or even criminal) and also took place many years ago. And even if any of these acts had some marginal probative value as to CC-2's truthfulness or untruthfulness—which they do not—that probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, embarrassing the witness, undue delay, and waste of time. *See* Fed. R. Evid. 403; *Devery*, 935 F. Supp. at 407-08.

**III.    Evidence or Argument Concerning the Defendant's Background, Age, Family, or Any Other Personal Factor Unconnected to Guilt, and Concerning the Potential Punishment the Defendant Faces if Convicted, Should be Precluded**

The Court should preclude the defendant from introducing evidence or making arguments concerning his family background, age, education, or any other similar personal factors.  These facts and arguments are irrelevant to and do not bear upon the merits of the case, that is, whether the defendant participated in a scheme to defraud the Company and conspired to commit money laundering.  *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy); *United States v. Battaglia*, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Crown*, No. 99 Cr. 1044 (AGS), 2000 WL709003, at *3 (S.D.N.Y. May 31, 2000) (precluding evidence of defendant's medical condition as not relevant to the crime of illegal reentry and in any event outweighed by its "potential prejudicial effect on the jury").  As none of these facts or arguments would bear upon the elements of the charged offense, the defendant should be precluded from raising these issues under Federal Rules of Evidence 401 and 402.

Even if these facts and arguments had any probative value, they would be substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.  The presentation of evidence of a defendant's personal history and characteristics, for example, that the defendant has health issues, served in the Marines, and is a September 11 survivor, *see, e.g.*, Dkt. No. 17, Feb. 23, 2022 Ltr. at 1 (describing the defendant as a former Marine and "a survivor of the 9-11 attacks having escaped the first of the twin tours [sic] that were destroyed"); Dkt. No. 22, Feb. 16, 2022 Arraignment Tr. 25:3-6 (raising health issues purportedly arising from September 11 and his military service), could improperly influence the jury by appealing to their

sympathies, or confuse and mislead the jury as to the issues that need to be decided in this case. *See* Fed. R. Evid. 403, Advisory Committee's Note (noting that evidence is excludable if it has "an undue tendency to suggest decision on an improper basis"). Absent a legal basis to introduce evidence of or make arguments concerning the defendants' personal circumstances, the defendants should be precluded from doing so, and from mentioning such subjects in their opening statements. *See United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The defendant should similarly be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). Information regarding the potential consequences of a guilty verdict is irrelevant to the jury's task. *See id.* Providing jurors with such information invites them to consider matters that are outside of their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. *See id.*; *see also United States v. Riley*, No. 13 Cr. 339 (VEC), 2014 WL 3435721, at *2 (S.D.N.Y. July 14, 2014). Rather, all of these arguments concerning the consequences of a conviction should be made to a judge in connection with sentencing. The defendant should accordingly be precluded from offering evidence or argument that has no purpose but to seek to persuade the jury to consider punishment, or any other potential consequence of conviction.

## IV. The Court Should Preclude Evidence and Argument that the Victim Failed to Detect or Stop the Defendant's Fraud or Was Otherwise Negligent in Not Uncovering the Fraud

The defendant should be precluded from introducing any evidence or arguments that the Company was to blame for the defendant's fraud, either because it failed to conduct sufficient

diligence, was negligent, or otherwise acted unreasonably in relying on the defendant's representations. Such a "blame-the-victim" defense is wholly impermissible.

### A. Applicable Law

A defendant charged with a fraudulent scheme may not assert as a defense a victim's allegedly negligent failure to discover the fraud. *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (finding no error where district court prevented defendant from arguing that "it is a defense to mail fraud to demonstrate that the victim could have discovered based on external sources that the representation was false"); *United States v. Thomas*, 377 F.3d 232, 243-44 (2d Cir. 2004) (collecting cases and holding that the victim's negligence in failing to discover a fraudulent scheme is not a defense to fraudulent conduct); *United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107, at *4, 6 (S.D.N.Y. Oct. 19, 2018) (evidence that victim hedge fund did not exercise sufficient oversight of its investment inadmissible; "whether the Hedge Fund performed due diligence . . . is wholly irrelevant to these charges, and is merely a facile attempt to blame the victim—which is an impermissible strategy in a fraud case."); *United States v. Nekritin*, 10-CR-491 (KAM), 2011 WL 2462744, at *7 (E.D.N.Y. June 17, 2011) ("[The vicitm's] negligence in failing to discovery the fraud is not a defense and therefore such evidence is neither 'exculpatory' nor relevant to the issues in the instant case.").

### B. Discussion

The defendant should be precluded from offering evidence or argument that had the Company been more diligent, then the defendant's fraud scheme would not have occurred or resulted in as much loss. The defendant's fraud consisted of creating and signing fraudulent invoices to be paid by the Company. Whether the Company could have determined that the vendors were not actually performing work or taken additional steps to better supervise the defendant, who was an Executive Vice President at the Company, is irrelevant to the charges here.

24

It does not matter to the jury's determination of the defendant's guilt whether the Company or its employees were careless or should have caught on to the defendant's deception sooner, including by more closely scrutinizing documentation and information regarding the invoices.  Such evidence or argument would be an impermissible attempt to blame the victim for the defendant's fraud, would not be probative to the defendant's guilt or innocence, and would be unduly prejudicial.  *See Thomas*, 377 F.3d at 243; *see, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 13, 2022), Dkt. No. 288 at 8; *United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (excluding evidence of victim fault or negligence in a fraud case).

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: New York, New York
      April 28, 2023

<div style="margin-left:40%">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   s/_____
       Stephanie Simon
       Jim Ligtenberg
       Jamie Bagliebter
       Assistant United States Attorneys
       (212) 637-2236

</div>