USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 9/25/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

SHAWN RAINES,

Defendant.

No. 22-CR-18-02 (NSR)
ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge

Defendant Shawn Rains ("Rains" or "Defendant") is charged in a three-count Indictment with: (1) Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349; (2) Mail Fraud in violation of 18 U.S.C. §§ 1341 and 2; and (3) Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). (ECF No. 2, "Indictment.") Before the Court are the Government's motions *in limine* (the "Motion"). (ECF No. 46.) For the following reasons, the Government's Motion is GRANTED.

**BACKGROUND**

Although the Court assumes familiarity with the facts, allegations, and procedural background of this case, it restates the following allegations for context.

Until 2017, Rains was the Executive Vice President of the Claims Department at a healthcare benefit management company headquartered in White Plains, New York (the "Company"). (Motion, at 1.) The Company provides medical management services, including claims administration, to health insurance companies. (*Id.*) Rains' department was responsible for the ingestion, data processing and review of patient healthcare-related insurance claims. (*Id.*, at 2.)

From roughly 2009 to 2017, Rains and another employee of the Company, co-defendant Joseph Maharaj ("Maharaj" or "Co-Defendant"), allegedly orchestrated a scheme (the "Scheme") whereby three fake vendors (the "Vendors" or, individually, "Vendor") billed the Company for approximately $4 million of work they did not perform. (*Id.*; Indictment, at 1-2.) Maharaj's stepfather ("CC-1") controlled two of these Vendors, Payro Consulting LLC ("Payro") and Data Processing Central ("DPC"). (*Id.*) Additionally, Maharaj's high school friend ("CC-2") controlled the third Vendor, Worldwide Data Solutions ("WWDS"). (*Id.*) A third employee of the Company, who supervised the data management department and reported to Rains, facilitated the Scheme ("CC-3"). (*Id.*)

In early 2017, Company employees discovered that a relative of Maharaj ("Witness-1") was receiving paychecks as an employee of the Company despite performing no work for it. (*Id.*) Maharaj and Rains resigned after the Company subsequently initiated an internal investigation that led to the discovery of the Vendors. (*Id.*, at 2-3.)

## LEGAL STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United*

*States v. Perez*, No. 09–cr–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S.Ct. at 163)).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). Yet, the Court may still exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Although the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court retains "broad discretion to balance probative value against possible prejudice" under Federal Rule of Evidence 403 ("Rule 403"). *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

Further, the Court may admit evidence as "other act" evidence under Federal Rule of Evidence 404(b) ("Rule 404(b)"). The Second Circuit has adopted an "inclusionary" approach to other acts evidence. *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (citing *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir.2004) (*per curiam*)). Under 404(b), courts in this Circuit "may admit evidence of prior bad acts if the evidence is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). This inclusionary rule, however, is not "a carte blanche to admit prejudicial extrinsic act evidence when… it is offered to prove propensity." *Id.*

## DISCUSSION

The Government raises four categories of issues in its motion *in limine*, which the Court discusses below.

### I. Evidence Relating to Proof of Defendant's Involvement in Two Deceptive Acts in Connection with His Employment at the Company

The Government seeks to introduce evidence pertaining to proof of Rains' involvement in two deceptive acts in connection with his employment at the Company. (Motion, at 15-21.) Regarding the first deceptive act, the Government seeks to present testimony from Witness-1 about his "no show" job at the Company that Rains and Maharaj allegedly gave him as compensation for work he performed for SRJM Holdings, Rains and Maharaj's real estate investment company. (Motion, at 10.) Regarding the second deceptive act, the Government seeks to present testimony from the former owner and chief executive ("Witness-2") of a "legitimate" vendor for the Company ("Vendor-1") pertaining to Rains' partnership with Vendor-1; the owner of Vendor-1 would testify that Rains developed and sold software to the Company in partnership with Vendor-1 but failed to disclose his financial interest in this software to the Company. (*Id.*)

#### A. Testimony from Witness 1 Concerning his "No-Show" Job at the Company

The Government argues that Witness 1's testimony is admissible as direct proof of charged crimes, as Rule 404(b) evidence, or both. Specifically, the Government contends that testimony from Witness 1 concerning his "no-show" job is: (1) necessary to complete the story of Rains' charged crime because it explains how his alleged fraud was uncovered; and (2) admissible under Rule 404(b) because it indicates that Rains possessed sufficient power within the Company to commit the charged crimes as well as demonstrates Rains' willingness to

defraud the Company jointly with Maharaj. (Motion, at 16-17.) Rains disputes each of the Government's theories. With respect to the direct proof theory, Rains argues that how the Scheme was uncovered is not probative of the jury's understanding of the charged conduct and that, in any event, the facts of the "no-show" job are too dissimilar from the charged conduct to give the jury insight into the story of this conspiracy that it cannot glean from other evidence. (ECF No. 50 ("Opp."), at 7-8.) And with respect to the Rule 404(b) theory, Rains contends that the evidence of the "no-show" job is not probative of one of the specific purposes enumerated in Rule 404(b) because it is not sufficiently similar to the charged conduct. (*Id.*, at 8-9.) Rains also argues that Rule 403 bars Witness-1's evidence, as it is too factually dissimilar to the charged conduct for it to possess sufficient probative value to outweigh its prejudicial affect—he reasons that this evidence adds a separate, unrelated narrative of impropriety. (*Id.*, at 12.)

Evidence that "complete[s] the story of the crime on trial" or that "is inextricably intertwined with the evidence regarding the charged crime," is considered direct evidence of a charged crime rather than other evidence under Rule 404(b). *United States v. Carboni*, 204 F.3d at 39, 44 (2d. Cir. 2000); s*ee also United States v. Martoma*, No. 12 CR 973 PGG, 2014 WL 31191, at *2 (S.D.N.Y. Jan. 6, 2014). Courts routinely admit evidence of this nature to "g[i]ve coherence to the basic sequence of events." *United States v. Gonzalez*, 110 F.3d 941, 942 (2d Cir. 1997)*; see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offenses"). Where the exclusion of evidence concerning the uncharged conduct would create a "conceptual void in the story of the crime," admission of

such evidence is appropriate. Vol. 2, Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 404.20(2)(c) (2011).

Here, the Company conducted the internal investigation (the "Investigation") that uncovered the allegedly fraudulent Vendors only because it discovered that the Company paid Witness-1 (who reported to Maharaj) for two years even though Witness-1 did not perform any work for the Company. (ECF No. 51 ("Repl."), at 5-6.) Additionally, during the Investigation, Maharaj told the Company that Rains knew Witness-1 was hired as an "auditor" and the Company asked Rains whether he knew about the Vendors, which he denied. (*Id.*) Rains also allegedly requested documents during the Investigation from other expected witnesses, and these individuals purportedly considered these requests as attempts to frustrate the Investigation and hide the Scheme. (*Id.*) As noted *supra*, Maharaj and Rains ultimately resigned instead of participating further in the Investigation. (*Id.*)

Evidence concerning Witness-1's "no-show" job is essential context for the jury to understand the story of the charged offenses. Although Rains argues that Witness-1's testimony about his "no-show" job is too dissimilar to the charged offenses to have probative value, it is sufficient for such evidence to "demonstrate the context of certain events relevant to the charged offenses." *Inserra*, 34 F.3d, at 89. Without evidence of Witness-1's "no-show" job, the jury will have trouble understanding why the Investigation that uncovered the Scheme began. Further, absent this backdrop, the jury would find it more difficult to understand why the Company asked Rains questions about the Vendors in early 2017 and the context for testimony from other expected witnesses concerning Rains' requests for documents during the Investigation. Witness-1's testimony is thereby necessary to "g[i]ve coherence to the basic sequence of events" underlying the charged offenses and the Court admits it as direct evidence.

*Gonzalez,* 110 F.3d at 942*; see also United States v. Coyne*, 4 F.3d 100, 113 (2d Cir. 1993) (evidence of the defendant's membership in a developmental agency that pre-dated the charges in the indictment was admissible background evidence, as it helped to explain his established relationships and subsequent involvement in a project).[1]

**B. Testimony from Witness-2 Concerning Rains' Conflict of Interest**

The Government argues that Witness 2's testimony concerning Rains' partnership with Vendor-1 to build insurance auditing software that they sold to the Company (the "Software") is admissible as direct proof of charged crimes, as Rule 404(b) evidence, or both. The Government contends that this testimony is: (1) necessary to complete the story of Rains' charged crime because Rains used knowledge that he gleaned from his relationship with Vendor-1 to help advance the Scheme and lied to both Witness-2 and the Company to sell the Software to the Company; and (2) is admissible under Rule 404(b) because it demonstrates Rains' purported intent to defraud the Company. (Repl., at 9-10.) Rains again disputes each of the Government's theories. Regarding the direct proof theory, Rains argues that evidence that he is a "liar" is "blatant character evidence" and that the Company's acquisition of the Software is not sufficiently relevant to the charged conduct. (Opp., at 9-10.) Regarding the Rule 404(b) theory, Rains similarly argues that Witness-2's evidence is too dissimilar to the charged conduct— he reasons that testimony about the Software acquisition "has nothing to do" with the Scheme or Rains' siphoning of money to SJRM. (*Id.*, at 10-11.) Lastly, Rains advances the same argument regarding Rule 403 as the Court discussed *supra*.

[1] As Witness-1's testimony concerning his "no show" job at the Company is admissible as direct proof of charged crimes, it is unnecessary for the Court to determine whether this evidence is also admissible pursuant to Rule 404(b). Additionally, the Court briefly notes that Witness-1's testimony is clearly permissible under Rule 403. As described *supra*, this evidence is necessary to complete the story of Rains' alleged fraud scheme and, contrary to Rains' complaints, will thereby diminish the jury's confusion, not add to it.

The Court agrees with the Government that Witness 2's testimony regarding Rains' partnership with Vendor-1 is admissible as direct evidence. This testimony "is inextricably intertwined with the evidence regarding the charged crime," and is therefore necessary to "complete the story of the crime on trial," because: (1) the Government intends to argue that Rains' knowledge of the Vendors is reflected in his decision to develop the Software with Witness-2; (2) Witness-2's testimony regarding Rains' partnership with Vendor-1 is necessary context for his other expected testimony that he understood Rains' request for reports reflecting the work Vendor-1 accomplished as an effort to cover up the Scheme; and (3) some of the fraudulent invoices at issue allegedly claim that the Vendors accomplished work that the Software was responsible for performing. (Repl., at 9-10.) *See Carboni*, 204 F.3d at 44. Although Rains counters that "evidence that [Rains] is a 'liar' is blatant character evidence," the Court struggles to understand this classification of Witness-2's testimony. (Opp., at 9-10.) This testimony does not serve the purpose of broadly characterizing Rains as a liar— it instead aids the Government in its attempt to prove that Rains tried to obtain as much money as possible from the Company through various deceitful means, such as the Scheme for which he is charged. Thus, the Court admits Witness-2's testimony as direct evidence. [2]

## II. Whether the Court should Preclude Defendant from Engaging in Certain Lines of Cross-Examination

[2] As Witness-2's testimony concerning the Software arrangement is admissible as direct proof of charged crimes, the Court declines to determine whether this evidence is also admissible under Rule 404(b). Additionally, Witness-2's evidence is also permissible under Rule 403. It is inextricably intertwined with evidence bearing on the Scheme, as already discussed. Moreover, Rains' recognition that Witness-2's testimony is factually dissimilar to the charged conduct undercuts his complaint that its presentation risks confusing the jury . (Opp., at 11.) And, finally, the Government's professed intention to pose a limited number of additional questions to two or three other witnesses about the Software arrangement mitigates his other concern of undue delay. (Repl., at 13.)

The Government moves to preclude lines of cross examination for two of its expected witnesses: (1) a Company employee who is expected to testify about the functioning of the Company ("Witness-3"); and (2) a co-conspirator of Rains and Maharaj ("CC-2"), who purportedly helped to operate one of the Vendors.

**A. Witness-3**

The Government moves to preclude Rains from cross-examining Witness-3 about his two prior criminal convictions, both of which are more than seventeen years old. (Motion, at 22.) Witness-3 was convicted of: (1) false statements relating to health care matters, in violation of 18 U.S.C. § 1035 in May 2005, for which he was sentenced to three months' imprisonment and three years' supervised release; and (2) grand larceny in the third degree, in violation of New York Penal Law § 155.25, for which he was sentenced to five years' probation. (*Id.*) Specifically, the Government argues that the probative value of evidence relating to these convictions does not substantially outweigh its prejudicial effect, which it claims is the applicable standard under Federal Rule of Evidence 609(b)(1) ("Rule 609(b)(1)") to admit evidence of convictions that are more than ten years old. (Motion, at 25.)

Rains does not oppose the Government's motion with respect to Witness-3's January 2006 conviction for grand larceny. In fact, he agrees that the grand larceny conviction is not admissible. (Opp., at 13.) As does the Court— it is not probative of Witness-3's truthfulness, given that it is a crime of theft. Fed. R. Evid. 608(b). *See Shakur v. United States*, 32 F. Supp. 2d 651, 671 (S.D.N.Y. 1999) ("It is generally held that crimes of theft are not probative of truthfulness.") (citing Weinstein's Federal Evidence). However, Rains contends that the Court cannot exclude Witness-3's 2005 conviction for false statements because caselaw in this district

instructs that convictions involving an element of untruthfulness are inherently more probative than prejudicial. (Opp., at 13.)

Courts retain broad discretion to determine the scope of cross-examination. *See United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989); *United States v. Whitten*, 610 F.3d 168, 183 (2d Cir. 2010). Under Federal Rule of Evidence 609 ("Rule 609"), a court may admit evidence of a witness's prior conviction for impeachment purposes, subject to certain limitations. Fed. R. Evid. 609. "[E]vidence of convictions for crimes involving dishonesty or false statement, whether felonies or misdemeanors, must be admitted under Rule 609(a)(2) as being *per se* probative of credibility, while district courts, under Rule 609(a)(1), may admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403." *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005) (internal quotation marks omitted). Where a crime does not automatically implicate the use of dishonesty or false statements, "the proffering party must demonstrate 'that [the] particular prior conviction rested on facts warranting the dishonesty or false statement description.'" *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977)).

The Court agrees with the Government that it should not permit Rains to cross-examine Witness-3 about his false statements conviction. Although Rains is correct that courts must usually admit evidence of convictions involving false statements because they "are inherently more probative than prejudicial as to a witness's capacity for truthfulness," he fails to recognize that the age of Witness-3's false statements conviction prevents it from being automatically admissible under Rule 609(a)(2). In instances where, as here, the conviction is greater than ten (10) years old, courts in this Circuit are instead required to apply the standard of Rule 609(b),

which asks whether the probative value of the conviction substantially outweighs its prejudicial effect. Fed. R. Evid. 609(b)(1); *See United States v. Payton*, 159 F.3d 49, 56–57 (2d Cir. 1998) ("Specifically, Rule 609(a)(2) instructs that evidence of all prior convictions for crimes involving dishonesty or false statement shall be admitted, regardless of the degree of punishment. Rule 609(b), however, imposes a time restriction of ten years on the admissibility of evidence under Rule 609(a)(2)" and "Rule 609(b) bars the use of a conviction more than ten years old to impeach a witness unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect"); *Farganis v. Town of Montgomery*, 367 F. App'x 666, 669 (2d Cir. 2010) ("We have repeatedly 'recognized that Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances.'") (quoting *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) (internal quotation marks omitted)). Witness-3's conviction is not admissible under the Rule 609(b) standard. This conviction is close to two decades old, and there is no indication that Witness-3 has committed further criminal dishonest conduct since his state and federal convictions in 2005 and 2006. (Repl., at 17.) The probative value of such a conviction does not substantially outweigh its potential for prejudice, as it is more likely to prejudice the jury against Witness-3 than aid its evaluation of his credibility. Thus, the Government's motion to preclude cross-examination on Witness-3's convictions for grand larceny and false statements is granted.

**B. CC-2**

The Government moves to preclude Rains from cross-examining CC-2 about numerous acts of petty theft that that he committed throughout his life, the last of which occurred in 2017. (Motion, at 22.) In particular, the Government argues that they are not probative of CC-2's

truthfulness, as CC-2 freely admitted to them in proffers with the Government, crimes of theft are generally not viewed as probative of truthfulness, they are minor in severity, they are remote in time, and, finally, their prejudicial potential substantially outweighs their probative value. (Motion, at 27.) Rains does not oppose this request. And, as noted *supra*, crimes of theft are not generally considered probative of truthfulness. *Shakur*, 32 F. Supp. 2d at 671. Thus, the Court grants the Government's motion to preclude Rains from cross-examining CC-2 concerning the petty thefts he committed.

The Government further moves to preclude Defendant from cross-examining CC-2 about his: (1) ownership and use of a fake identification prior to age 21; (2) use of an employee identification for a company where he no longer worked to enter museums for free; (3) residence in an illegal rent sublet; and (4) loaning money to his nephew, and later hearing (but not knowing) that his nephew was engaged in criminal conduct ("the Acts")— it argues that none of the Acts are probative of CC-2's truthfulness or untruthfulness and that their danger of unfair prejudice substantially outweighs their probative value. (Motion, at 28.) Rains does not oppose this request, and the Court agrees with the Government that the Acts do not pass Rule 403's balancing test. *See* Fed. R. Evid. 403. None of the Acts, with the possible minor exceptions of using a fake identification in two instances, pertain to CC-2's truthfulness, and offering even one of them to the jury presents a substantial risk of prejudice given their negative associations. Therefore, the Court grants the Government's motion to preclude Rains from cross-examining CC-2 about the Acts.

## III. Evidence or Argument Concerning Rains' Background, Age, Family, or Any Other Personal Factor Unconnected to Guilt, and Concerning the Potential Punishment Rains Faces if Convicted

### A. Evidence Concerning Rains' Background

The Government moves to preclude Rains from introducing evidence or advancing arguments concerning his family background, age, education, or any other similar personal characteristics, including evidence or arguments concerning the punishment or consequences he faces if convicted.[3] These facts and arguments, the Government argues, are irrelevant to the central questions of this case, which are whether Rains participated in the Scheme and conspired to commit money laundering. (Motion, at 29.) Moreover, the Government claims that the danger of unfair prejudice and confusion that they present substantially outweighs their probative value. (*Id.*, at 29-30.) Rains disagrees— he contends that the Government's request is premature, given that the Court does not know the purposes for which Rains would offer evidence in this category. (Opp., at 14.) He also argues that a defendant has the right to present character evidence in his own defense and that background evidence is permissible if it satisfies the standards of Rules 401 and 403. (*Id.*)

The facts pertaining to Rains' background that the Government identified in its motion—that Rains is a devoted family member, survived 9-11, served in the military, and has serious health problems—possess little relevance, if any, to the charged conduct of fraud and money laundering. And Rains does not explain their relevancy, apart from the vague, unconvincing claim that his personal background evidence, in general, aids the jury's consideration of his intent. (Opp., at 14.) They are also prejudicial, as any one of them may improperly elicit the jury's sympathies. It is unsurprising, then, that courts in this district routinely preclude a defendant from offering these types of facts because their danger of unfair

[3] Although the Government expresses concern that Rains would offer evidence that he is devoted to his family, has health issues, served in the Marines, and is a survivor of September 11tth, it does not specify other potentially prejudicial facts. (Motion, at 29.)

prejudice substantially outweighs their probative value. *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir.1991) (affirming district court's exclusion of evidence that the son of a defendant accused of fraud had cerebral palsy because such evidence "could well cause the jury to be influenced by sympathies having no bearing on the merits of the case"); *United States v. Crown*, 99-CR-1044, 2000 U.S. Dist. LEXIS 7433, * 11 (S.D. N.Y. May 31, 2000) ("[E]ven if the HIV/AIDS evidence were probative of a material proposition, the Court finds that its probative value would be outweighed by its potential prejudicial effect on the jury."); *United States v. Battaglia*, No. S9 05 CR. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) ("evidence of Defendant's family and personal status…. appears not to be relevant to the issue of whether Defendant committed the crimes charged and would thus be inadmissible pursuant to Rule of Evidence 401"); *Thompson v. State Farm Fire and Cas. Co.*, 34 F. 3d 932, 940 (10th Cir. 1994) (affirming the district court's exclusion of evidence that the plaintiff had suffered from epileptic seizures because such evidence was not relevant and "would carry the potential of an inappropriate appeal to the jury's sympathy").

The Government's motion is thereby granted pursuant to Rule 403, in so far as the Court precludes Rains from presenting evidence that he is a devoted family member, survived 9-11, served in the military, and has serious health issues. However, the Court denies the Government's request for a preclusion of all evidence concerning Rains' background or personal characteristics. As Rains rightly argues, a blanket prohibition of this nature is premature, since it is conceivable that certain information about his background may satisfy the standards of Rules 401 and 403. *See United States v. Vargas*, No. 18 CR. 76 (PAC), 2018 WL 6061207, at *3 (S.D.N.Y. Nov. 20, 2018) (noting that the Court "will not bar Defendant from

presenting character witnesses or testimony about his personal circumstances to the extent they rebut facts brought into issue in the Government's case in chief").

**B. Evidence Concerning the Punishment or Consequences Rains Faces if Convicted**

The Government also moves to preclude Rains from offering evidence or argument concerning the punishment or consequences he faces if convicted, without opposition from Rains (Motion, at 30.)

The Court grants this part of the Government's Motion. Such evidence is clearly irrelevant in cases where, as here, the jury does not participate in sentencing the defendant. *See United States v. Cook*, 776 F. Supp. 755, 757 (S.D.N.Y. 1991) (citing *Taylor v. Kentucky*, 436 U.S. 478, 483–85, 98 S.Ct. 1930, 1933–35 [1978] ) ("Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform th[e] function" of "determin[ing] guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear or prejudice."); *United States v. Glick*, 463 F .2d 491, 494 (2d Cir.1972) (finding that the prejudice caused by the court's failure to instruct the jury in the presence of the defendant was compounded by the "total failure to make clear to the jury that its function was to decide guilt or innocence and that sentencing was the judge's province and his alone"); *Shannon v. United* States, 512 U.S. 573, 579, 114 S. Ct. 2419, 2424, 129 L. Ed. 2d 459 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed") (citing *Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975)).

**IV. Evidence or Argument that the Victim Failed to Detect or Stop Rains' Alleged Fraud or was Otherwise Negligent in Not Uncovering It**

The Government moves to preclude Rains from introducing evidence or arguments that the Company was responsible for the Scheme because it was negligent or acted unreasonably when it relied on Rains' representations. (Motion, at 32.) Rains does not oppose this request.

The Government is correct that a "blame the victim" argument is not a permissible defense to fraud, and that it is therefore not probative of Rains' guilt or innocence. (Motion, at 31-32.) Rains does not dispute this point, and courts in this Circuit have concluded likewise with apparent uniformity. *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (upholding the district court's decision neither to charge the jury nor allow the defendant to argue "that it is a defense to mail fraud to demonstrate that the victim could have discovered based on external sources that the representation was false")*; see also United States v. Carton*, No. 17 CR 680 (CM), 2018 WL 5818107, at *4 (S.D.N.Y. Oct. 19, 2018) (noting that the "blame the victim" strategy is "an impermissible strategy in a fraud case"); *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (collecting cases and noting that a fraud victim's carelessness or gullibility is not relevant to an inquiry into whether the perpetrator of the fraud is guilty); *United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 8732355, at *3 (E.D.N.Y. June 24, 2016) (recognizing that "the Second Circuit follows the well settled rule that a defendant charged with a fraudulent scheme may not assert as a defense the victim's negligent failure to discover the fraud"). Thus, the Government's motion to preclude Rains from introducing any evidence or arguments that the Company should accept blame for the Scheme is granted.

## **CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* are GRANTED. Specifically, the Court grants the Government's motions to: (1) present testimony from Witness-1 concerning his "no show" job at the Company; (2) present testimony from Witness-

2 pertaining to Rains' partnership with Vendor-1; (3) preclude cross-examination of Witness-3 about either of his two prior criminal convictions; (4) preclude cross-examination of CC-2 concerning his numerous acts of petty theft, use of fake identifications in two instances, residence in an illegal rent sublet and loaning of money to his nephew and later hearing (but not know) that his nephew was engaged in criminal conduct; (5) preclude Rains from presenting evidence that he is a devoted family member, survived 9-11, served in the military, and has serious health issues;[4] (6) preclude Rains from offering evidence or argument concerning the punishment or consequences he faces if convicted; and (7) preclude Rains from introducing evidence or arguments that the Company was responsible for the Scheme because it was negligent or acted unreasonably when it relied on Rains' representations.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 46.

Dated: September 25, 2023
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

[4] As discussed *supra*, the Court denies the Government's request for a preclusion of all evidence concerning Rains' background.